Good morning, Your Honors. May it please the Court. I am Dave Lawler, and along with my co-counsel, Demise Camacho, we are certified law students under the supervision of Attorney Andrew Knapp, providing pro bono representation to Petitioner Ms. Rose Mwaniki. And first, Your Honors, thank you for being gracious enough to allow us to split the time today with the clock. I will be addressing, during my time, the issues surrounding the cancellation of removal decision, and then Demise will pick up and discuss the issues surrounding the asylum withholding and CAT claim. Your Honors, this issue is about the survivor of domestic abuse at the hands of her U.S. citizen husband being improperly denied special rule cancellation of removal for two reasons that we'd like to highlight today. The first, the alternative discretionary decision was flawed as a matter of law because the BIA applied the wrong legal standards. So that's the only way we can review that determination, isn't it, if we determine that the incorrect legal standard was used? Yeah, unless Your Honors would assume jurisdiction and, in arguendo, reach into the good moral character waiver, yes. Yeah, we can't assume jurisdiction. We have to affirmatively determine that we have it. So, just so procedurally we're all on the same page, you're asking us to determine, in terms of the cancellation of removal decision, that the wrong standard was used. That is correct, Your Honor. And what was, what standards should have been used and what standard was actually used in your view? In Rose's view, there's two notorious legal claims here, Your Honor. First is the analyzation of rehabilitation was not consistent with the BIA's matter of Edwards decision. And then secondly, the BIA failed to consider hardship as it was required by its regulation. So first, with respect to rehabilitation, matter of Edwards requires that, or held that, a lack of an objective showing of rehabilitation cannot be a per se bar to a good moral character, a favorable exercise of discretion. It can't be the only reason. Yet, when we go to the BIA decision at AR-5, the BIA dedicated an entire paragraph to rehabilitation where, I quote, we observe the respondent has been in criminal and immigration custody since her most recent arrest and has, therefore, not demonstrated rehabilitation. But was that the only basis for the determination of good moral character? It says it can't be a bar, but it can be a consideration. Your Honor, the BIA reviewed this matter de novo, and this is the only analysis that they provide. The BIA did make one of the cryptic statements that acknowledged, or I believe it was the IJ properly balanced the negative and positive. However, the only analysis that the BIA gave was the rehabilitation, and basically said because Rose was incarcerated, she can't demonstrate rehabilitation, which is exactly the pre-Edwards view that Edwards rejected. The second legal claim that we would like to highlight from the briefs today is the BIA ignored the highly probative factor of hardship. Hardship is highly probative because in the VAWA context, there are statutes that guide the analysis of hardship. Importantly here, the IJ made a formal statutory finding of extreme hardship. Yet here, the BIA simply in discussing the discretionary decision, we acknowledge the positive and equity set forth by the IJ. This is an error that's similar to in Zhang when this court found that the BIA erred in not dealing with the highly probative factor of value of community. Here, the BIA failed to deal with the highly probative factor of hardship. Rose would ask that this court recognize that these two legal errors are colorable and therefore gives this court jurisdiction over the discretionary decision. Is there any indication that BIA's discretionary determination would be any different if petitioner was entitled to the special rule cancellation? Your Honor, no, there is not. We believe that there is substantial evidence that on remand that would change or at least taken into consideration. For instance, with hardship, just going through the hardship analysis that the IJ went through in the statutory would make a difference. But I thought the government indicated that it wouldn't be any different. It wouldn't be any different under the way they analyzed it, but I guess the point that we're making is that the government used the wrong analysis. If they take into consideration the matter of Edwards and properly analyze rehabilitation, and if they properly analyze hardship and consider hardship, that it would make a decision. I mean, I think the IJ pointed out that it wouldn't make a difference, but if they properly consider these legal issues, we believe that it would make a difference. And so for those reasons, we ask that this court remand for the discretionary decision. So counsel, the hardship, did the IJ discuss the hardship? The IJ used the word hardship in the discretionary decision, Your Honor, with no analysis. And our view is that there's two problems with that. The first is the IJ did hardship through the hardship of Rose's suffered here in the United States with the abuse of her husband. However, this court, I'm sorry, Your Honor. No, go ahead. However, this court in Figueroa said that the hardship is a forward-looking test and they should have looked at whether the hardship, if she had been removed. Well, the BIA on page 4 did say that the immigration judge concluded that the respondent met her burden of proof to establish that she has been battered and that her removal would result in extreme hardship. So the finding was made in her favor. That was in the statutory analysis, Your Honor, not in the discretionary decision. One has to go further down the page. In fact, I believe the government quoted that in the answering brief. And we pointed out that that's the statutory decision. The only mention of hardship in their discretionary analysis is the word hardship. So let me ask you what case you're relying upon to support the proposition that in the discretionary determination, hardship must be considered expressly. What case says that? Well, the BIA's, and I realize it's not binding on this court, but the BIA's matter of AM specifically lists extreme hardship as a factor to be considered. But does it, must it be expressly considered in the discretionary determination? Does AM say that? I would need to file something with the court, Your Honor. Don't file anything unless we ask you. Okay. Or maybe I'm... I'm just asking you from your recollection of the case. From my recollection, yes, and I will double check to see if I can clarify anything about it if we have any time for rebuttal. All right. Thank you, counsel. Okay. May I briefly just, and I realize I'm over my... You're over your time, so if you want to cut into your counsel's time. No, I do not. Okay. Okay. Thank you, Your Honors.  Good morning, Your Honors. May it please the court, Demis Camacho representing the petitioner Rose Mwaniki under the supervision of Professor Andrew Knapp. I will be focusing on the CAT and on the motion to remand issue. Your Honors, this case is about a Kenyan woman who is seeking refuge from female genital mutilation, or FGM, and gang rape. Your Honors, petitioner to respectfully request this court to grant CAT relief because the Mwaniki's inquiries regarding Rose's whereabouts were threats, erred in finding that Rose's siblings in hiding meant that they were safe, and erred in finding that the Kenyan government would not acquiesce to Rose's torture. And because of proper consideration, absent these errors compels the conclusion that Rose will more likely than not be tortured by the Mwaniki with the acquiescence of the Kenyan government. In addition, petitioner requests this court to remand the case for the BIA to properly rule on Rose's ignored motion to remand. Has petitioner's mother been granted asylum in the U.S.? Your Honor, I can't remember off the top of my head, but I believe that she had her asylum proceedings and I'm sorry, Your Honor, I can't remember off the top of my head if she was The threats. Substantial evidence does not support the finding that the Mwaniki's inquiries regarding Rose's whereabouts were not threats. Rather, it compels the contrary conclusion that the Mwaniki's demands to know where Rose was located are threats to her safety. This court has stated in Kaiser v. Ashcroft that it's the actor's willingness and ability to carry out those threats that must be analyzed when a group is making such threats. And here, the record compels the conclusion that the Mwaniki are more than capable and more than able to carry out those threats. But counsel, wasn't petitioner's mother able to relocate and therefore avoid any attacks from that group? Your Honor, petitioner's mother first lived in the area where the first attack occurred and there she was gang raped and beat. And then she moved to Nairobi where she was attacked years later again by the Mwaniki. And then she also lived in Meru. That's where she wasn't attacked. But then she was attacked or attempted attack a third time that she was able to escape. In Meru? I believe it was in Nairobi as well. Right. So I thought the record reflected that when she relocated to Meru there was not any attack which indicates that the petitioner could also relocate within the country without fear of torture. Well, Your Honor, in regards to whether she can relocate, the record also has evidence that the Mwaniki have a huge network of informants. And Rose's mother Faith testified credibly that even her own family could possibly sell her out because the Mwaniki often seek favors, especially from Kikuyu members who want favors with the Mwaniki. And that compels the finding that no matter where Rose would go, that the Mwaniki would be able to locate her. And also coupled with the evidence that her mother was, did relocate to a different city and was attacked there also. What's the evidence in the record that the Mwaniki would be inclined to persecute Rose as opposed to her mother? Well, Your Honor, they already did persecute Rose's mother. But Rose, rather than her mother. Well, in regards to why they specifically would persecute Rose, it's in order to control her mother. Here, the record shows that, and, apologies, Your Honor. The record reflects that she had no personal encounters with the Mwaniki, right? No, Your Honor. And personal encounters are not required. This court has stated in Yunguna v. Ashcroft that threats are not idle when family members back in their home country are attacked. And here, Rose's mother was attacked. But what evidence is there of threats to Rose as opposed to her mother? In regards to the threats specifically to Rose, that would be the Mwaniki's inquiries while they were gang raping and beating their mother, asking where her children were located. In addition, there's evidence in the record that as early as in December 2016, the Mwaniki went to Faith's Old Beauty Salon and asked specifically where her daughter in the U.S. was located. And that's Rose's daughter in the U.S. Her other siblings are still in hiding in Kenya, hiding from the Mwaniki. And they went into hiding right after the Mwaniki went to that store and asked where her children were located. In addition, Your Honor, I'll move over to my motion to remand issue. On that issue, Rose separately and distinctly moved the BIA to remand on her case. And this court has stated in Narayan v. Ashcroft that motions to remand to seek new evidence that was not available before the IJ to be admitted must be addressed. And it's an error for not to address those motions to remand. Did the board deny the motion to remand? Here the board did not deny or grant the motion to remand. Instead, it went into an improper analysis whether the evidence was material, which can be viewed as weighing the evidence and the BIA's own regulations prohibit from making fact findings on appeal. And Your Honor, in addition, there's no decision here where this court can either affirm or deny the motion to remand, whether it was granted or not. And the policy here is to enforce presentive with a full and complete record and the BIA must address the motions to remand. And Your Honors, because the lower court's findings are not supported by substantial evidence, petitioner requests this court to grant the petition for review. Thank you, Your Honors. I would like to save the remainder of my time for rebuttal. All right, you have 38, 37 seconds. Good afternoon. Yeah, good morning. Still morning. All right. Sarah Pergolese for the government. May it please the court. Good morning, Your Honors. The court should deny this petition for review in part and dismiss it in part because the agency's conclusions in this case are either unreviewable and dispositive discretionary determinations or factual findings that are supported by substantial evidence. While my friends have discussed the agency's lack of an explicit mention of hardship with respect to their cancellation denial as a matter of discretion, the look at that paragraph is a tad myopic in the sense that I would draw the court's attention to that same paragraph, which is on page three of the agency's decision and record citation page five. Oh, yes. Sorry. And the petitioner has made a large mistake and has made a lot of fuss about the sentence where the agency has said that the petitioner therefore has not demonstrated that she is being rehabilitated. I'm sorry. I was talking about rehabilitation and not hardship. My apologies. But in the same breath, in the same paragraph, in the very next sentence, in the next sentences, the agency also says that given the petitioner's quote long history of alcohol abuse and driving under the influence, her claims that she is properly rehabilitated while in detention are speculative. And as Judge Rollitzen properly made note of, rehabilitation, the detention status of a petitioner while they rehabilitate is certainly relevant to this inquiry. It cannot be seen as a per se bar to proving rehabilitation. But the ability to rehabilitate in a controlled environment in which the person has no exposure to alcohol does not dispositively show that she can rehabilitate in a context where she doesn't have those controls. And Ms. Panicki has shown repeatedly that she fails to rehabilitate in those circumstances. Moving to, and as petitioner's counsel has not, not alleged, I would again reiterate our points in our brief that the court need not reach the issue of whether or not the petitioner's bar to good moral character is connected to her abuse because the discretionary determination regarding her application for cancellation of removal is dispositive in this case. But if petitioner qualified for special rule cancellation, would that affect the determination? In this case, Your Honor, I don't think it would because it seems apparent by the agency's decisions that those considerations were relevant. Discretionary, a discretionary denial of cancellation of removal is completely dispositive and can be upheld even where the alien has shown that she meets all four of the requirements for cancellation of removal. I would also draw the court's attention to the immigration judge's decision on the discretionary denial, which the board also cites. And that is at page, I'm sorry for flipping here, on page 108 of the record, in which the immigration judge finds that as a matter of discretion, the petitioner has failed to merit cancellation of removal. And in making that determination, the immigration judge assumes that she had met and the alternative had met those criteria. And so that is just in the middle of that long paragraph. In the present case, even if the respondent were statutorily eligible for cancellation, she would not merit it as an exercise of discretion. And I would stress again on the cancellation aspect before moving to the merits of the withholding and CAT claims that the petitioner's challenges regarding trying to frame this as a legal question, the court has repeatedly held that in reviewing whether that's a legal question or not, a challenge of the legal standards that the board applied is certainly a legal challenge. But in this case, the board clearly listed and reiterated and followed its own legal standards, which are to review discretionary determinations de novo and to weigh all factors in determining whether or not a petitioner merits that discretionary grant of relief. And at bottom, the petitioner's challenges are more with the weight of that determination, the weight those factors got, rather than whether they were considered in the first instance by the board. I'd like to move, if the court has no further questions about cancellation, to the matter of withholding and CAT protection. And since the court appears to not have a lot of questions, I will be brief and conclude soon. Well, I do have a question on that, Clara. Oh, you do? Okay, good. I'm sorry for taking so much time on the cancellation then. With respect to the withholding, I'm sorry, were you about to speak? Go ahead. Just very briefly, the agency's determinations are supported by substantial evidence. And this court's substantial evidence review standard is a strict one. That the record, which is voluminous in this case, may suggest alternative conclusions, does not meet that standard of substantial evidence review. Is there any evidence in the record that the petitioner's siblings are not in hiding? There is no concrete evidence about that. We only have the statements of the petitioner and her mother on the record saying that they are. Which is credible. Yeah, and they are fully credible, Your Honor. But I would contest that while the siblings are in hiding, their safety was still assured to Rose and her mother, and the mother testified  But that seems odd, because if removed to Kenya, it seems to me that the BIA's opinion suggests that the petitioner can just do what their siblings are doing, and that's live in hiding. And that does not seem like the right answer. If that were the only basis for the relocation finding, Your Honor, I would agree with you that that is insufficient. However, the agency also considered the safety of Rose's extended family in Meru. And those family members, their circumstances are directly relevant because they, like Rose's siblings, are related to Rose's mother. And therefore, their safety also does suggest, and there's open safety in an area of Kenya that is not within the zone of influence of the Mungiki, and in which women are not subjected to FGM as a matter of practice. Their safety and living situation in Meru is relevant to the relocation analysis, and the agency properly considered it. And what was their statement? Was the statement that they can, they are, Meru is the location that they will be going to? Rose testified, yes, Rose testified that she did not believe that she could relocate to Meru because she hadn't spoken to those relatives in a long time. Now, that conclusion on its own is not compelling that she could not relocate there, given the rest of the voluminous country record evidence that shows that the Mungiki are not active, or, I'm sorry, it does not explicitly say that the Mungiki are not active in Meru, but it says that the Mungiki are active in the central region of Kenya and the Rift Valley, which is to the west. And her mother lived there unmolested. That's, exactly. And as, as you did, Judge Rawlinson, make point of that during petitioner's testimony, her mother did say. Arguably not testimony. Yes, I'm sorry. I, I think I need more coffee. The mother did live in Meru in the 90s for about a year and safely. She also lived on the southern border of Kenya between, near Tanzania for a month before she relocated and was safe. Now. Agree with the opposing counsel that the Mungiki have specifically inquired about Rose? I do agree that they have specifically inquired about her based on the one statement that the mother made during testimony that they asked her former co-worker, but the woman who now, the person who now operates her shop about whether she had returned. But I disagree with the framing of that ask. The framing that it is a direct threat and an explicit threat that the Mungiki intended to do the same thing they did to Rose. Why were they asking about her? I don't know your honor, but it is the. Apparently they inquired about her according to your friends over here during the time that they were raping her. That is part of Faith's statement before the court. And of course, again, Faith was found fully credible. Yeah, so that's my question. I understand that. Yeah. You don't think that's compelling? I don't think that that alone is compelling based on this court's precedent about when threats compel a conclusion of likelihood of future harm, your honor. And again, as far as the petitioner has cited the new Guggenheim case, and I'm very sorry for I'm sure I have mispronounced that. That case was a far more extreme incidence of direct harm to family members and threats at the same time as the inquiry. And I would also draw attention to the. There's been more than one inquiry, though. If we yes, I'm sorry, I'm not implying that I don't credit Faith's statement because it's fully credible and we all agree that. Yeah, I just want to make sure that but I do want to also emphasize that in my brief, I gave that statement and it seems that the agency has given that statement less probative weight because during Faith's testimony, she did not repeat that statement when describing her experiences. She did not repeat that her daughter was threatened during the rape. So the number of times that something is said matters. Of course, your honor. But it also the whole totality in testimony that we have to count up the number of times that no, no, I'm not. I'm not saying that it's just positive, but I am saying it goes to weight. And the more contemporaneous contemporaneous testimony from Faith. She did not repeat that that that threat occurred during that event. And when she was asked repeatedly during testimony, was your daughter? Did they ask about your daughter? Did they threaten her? Her direct testimony was that, yes, they did after I left and they asked about her at the shop. But that again, that ask was not coupled with a threat in that more immediate. And I also am not sure that that is a convincing a convincing that it proves one way or the other that Rose was directly that the Mungiki have continued interest in Rose. But I also want to emphasize that that's not the standard of review that that I have to meet or that this court has to use. The standard of review is substantial evidence and that two conclusions are possible does not mean that the petitioners have prevailed. The evidence, especially just given the totality of the circumstances in Rose's time in the United States, her lack of exposure to the Mungiki directly and her family, which are because of their relationship to her mother in a similar situation, circumstance and live within Kenya are all record evidence that does support the agency's conclusion, even if the agency's points about these threats are not as fulsome as we'd like them to be. Counsel, do you agree with opposing counsel that the board failed to deny the motion for remand? Your Honor, I argued in our briefing that the board reached that issue enough. I would disagree that the board. Excuse me. I would certainly agree that the four corners of the board's decision do not contain the words. We therefore deny the motion to remand, nor does sometimes most of the time on the board's decision in the caption on the first page. The requested relief is usually listed in here. It just says appeal and not appeal in motion. But I would say that the motion to remand that was contained within the brief on appeal to the board on the very last page in a separate header, but was not captioned as a motion to remand in the issue statements or in the summary of that argument, was directly related to the timeliness issue in this case, because it was essentially both the motion to remand and the challenge of the agency's timeliness issue were both dealing with whether the 2017 elections constituted a material change that both required the agency to consider her asylum application timely, but also would have a material weight on her claim as a whole. And in that regard, the agency did reach the materiality of the new evidence that she submitted on her appeal to the board. And so our position is that the board reached that issue enough and the court can deny that portion of the petitioner's petition for review. With respect and very quickly with respect to the petitioner's arguments today that the  we would argue that those arguments are a tad misplaced as the board when they're determining the board when they are faced with a motion to remand during the pendency of an appeal before them, they treat that motion as a motion to reopen and motions to reopen need to be based on material new evidence. And therefore, in every case for the board to determine whether remand or reopening is warranted, the board has to determine whether the new evidence is material. And so while the board ordinarily on its appeal review of the immigration judge's decision cannot make factual findings, the board must decide whether the evidence is material in that limited function. And I see I'm out of time. All right. Thank you. Thank you. The bottle. Your Honor, it's just one point with respect to hardship. The this case, this court's Cole versus Holder says that, excuse me, probative. This pository factors must be considered. And here, hardship is one of those positive, excuse me, probative factors that should be considered. All right. Thank you, Your Honor. Thank you, Counsel. Is that it? All right. Thank you. Thank you to all counsel. We again thank the students and the supervising attorney from Western State College of Law that completes our calendar for the morning. We are in recess until 9 30 a.m. Tomorrow.
judges: Rawlinson, Murguia, Rakoff